IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEMTECH INTERNATIONAL, INC., : | CIVIL ACTION |
| Plaintiff, : | |
| v. : | No. 05-140 |
| CHEMICAL INJECTION TECHNOLOGIES, INC., : | |
| Defendant. : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **JUNE 26, 2006**

  Plaintiff Chemtech International, Inc. ("Chemtech") is suing Defendant Chemical Injection Technologies, Inc. ("CIT") for breach of contract. Presently before this Court is CIT's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, CIT's Motion is granted.

I.  **BACKGROUND**

  In November 1996, Chemtech and CIT entered into a written agreement ("Agreement") to distribute gas chlorination equipment in Southeast Asia. In the Agreement, CIT appointed Chemtech as its "exclusive distributor to represent our SUPERIOR Gas Chlorination equipment in the following territory: Thailand, Malaysia, Singapore, Taiwan." (Chemtech's Amended Complaint, Ex. A). The Agreement provided that:

> CIT will forward all sales leads, customer inquiries, and all resale inquiries to
> [Chemtech] & CIT will not set up any other distributors or dealers in the territory
> defined above, and will make every possible effort to avoid any "encroachment"
> into this territory by other CIT distributors. It is required that [Chemtech], in turn,
> respect the territories of other established SUPERIOR distributors, and will not

represent, or sell products of, any competitor of CIT.

(Id.)  The Agreement's length was a one year period starting on November 18, 1996.  In addition, the Agreement contained a renewal provision stating that "[t]his agreement will be renewed at the end of the initial period providing that all terms and conditions have been met as stated in this agreement, and further providing that both parties are in accord as to projected unit sales goals."  (Id.).

On March 26, 2002, CIT sent Chemtech a letter in which it stated that Chemtech would "no longer have exclusive distributor status for the Municipal Water and Wastewater markets in [Chemtech's] territory."  (Chemtech's Amended Complaint, Ex. B).  The letter also stated that:

> [Chemtech's] sales have been on a steady decline since 1998.  Since we are in the business to sell chlorinators, we have no choice at this time but to make this change in your territory.  Chemtech will continue to be a protected distributor for [CIT], in the glove market and related industries.

(Id.).  Chemtech alleges that in April 2003 it learned that CIT was dealing directly with its subdistributors and its customers since the time of the March 26, 2002 letter.  (Chemtech's Amended Complaint, at ¶ 16).  Chemtech also alleges that CIT revoked its distributor status as to certain products on or about July 1, 2004 and that CIT revoked its distributor status altogether on or about August 19, 2004.  (Id., at ¶¶ 17-18).

Chemtech filed its original Complaint in January 2005 asserting claims against CIT for breach of contract, tortious interference with existing contractual relations, tortious interference with potential contractual relations, and for an accounting.  CIT moved for dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6). On April 12, 2005, this Court granted that motion.  The Court found that Chemtech's complaint failed to allege that the prerequisites of the renewal provision - that the terms of the contract were satisfied and that the parties agreed on the projected unit sales goals - were met.  Rather, the

original Complaint only illustrated "that the parties continued a relationship at will after the Agreement expired in November of 1997." Chemtech v. CIT, No. 05-140, 2005 WL 839404, *3 (E.D. Pa., Apr. 12, 2005). Because the Agreement was not renewed after its one year period ended on November 18, 1997, there was no contract for CIT to breach in March 2002. Accordingly, this Court dismissed Chemtech's breach of contract claim. This Court also dismissed all of the other claims in Chemtech's original Complaint.

Chemtech appealed to the United States Court of Appeals for the Third Circuit. Chemtech challenged the substantive decision of this Court, but also had a procedural argument that the dismissal was premature because the District Court should have afforded Chemtech the opportunity to amend its Complaint. On March 20, 2006, the Third Circuit agreed with this Court on its substantive decision, but vacated the judgment and instructed this Court to re-issue its dismissal order granting leave for Chemtech to amend its Complaint.

Accordingly, Chemtech filed an Amended Complaint on April 13, 2006. The Amended Complaint only asserts a breach of contract claim. Chemtech avers essentially the same facts in the Amended Complaint as in the original Complaint, but also adds averments concerning the renewal of the Agreement:

> The Agreement does not specify that renewal must be in any form or format, e.g., oral, written, or by conduct (Chemtech's Amended Complaint, at ¶ 7);
>
> The Agreement does not specify the length of a renewal term, but Plaintiff understood, and believes Defendant to have understood, that a renewal term would be the same as the initial term, that is, one year (Id.);
>
> After November 18, 1997, Plaintiff and Defendant conducted themselves as if "all terms and conditions [had] been met" and as if they had explicitly agreed "as to projected unit sales goals" (Id., at ¶ 10);

> After November 18, 1997, Plaintiff and Defendant conducted themselves as if the Agreement renewed itself and continued in full force and effect for successive one year terms (Id., at ¶ 11);
>
> At no time from November 18, 1996 until March 26, 2002 did either Plaintiff or Defendant give notice to the other of intention to terminate, rescind, revoke, or modify the Agreement, or that it had terminated, rescinded, revoked, or modified the Agreement; to the contrary, the parties continued to conduct business as usual (Id., at ¶ 12);
>
> From receipt of the Letter until on or about April 16, 2003, Plaintiff believed that, and acted as if, the Agreement, as modified and continued by the Letter, remained in effect, and Defendant gave Plaintiff no reason, by word or conduct, to believe or act otherwise (Id., at ¶ 14); and
>
> In reliance on Defendant's silence and Defendant's conduct, Plaintiff continued to perform its duties under the Agreement (Id. at ¶ 15).

The Amended Complaint also demands punitive damages which were not mentioned in the original Complaint.[1]

On April 27, 2006, CIT filed this Motion to Dismiss Chemtech's Amended Complaint. CIT argues that Chemtech has once again failed to state a breach of contract claim upon which relief can be granted because Chemtech's Amended Complaint fails to establish that the Agreement was renewed. CIT argues that the Amended Complaint does not establish that either of the prerequisites to the renewal provision was met. These two prerequisites are: (1) that the terms and conditions of the agreement have been met and (2) that the parties were in accord as to projected unit sales goals. Rather, according to CIT, all Chemtech asserts is that the parties acted as if these prerequisites were

---

[1] Chemtech's demand for punitive damages is improper. "The law [in Pennsylvania] is clear that punitive damages cannot be recovered merely for breach of contract." Baker v. Pa. Nat. Mutual Casualty Ins. Co., 536 A.2d 1357, 1361 (Pa. Super. 1988); see also Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 402 (3d. Cir. 2004). The only exception to this rule is when defendant's conduct also gives rise to an independent tort claim. Western Essex Corp. v. Casio, Inc., 674 F. Supp. 8, 9 (W.D. Pa. 1987); Daniel Adams Assocs. v. Rimbach Publ'g Inc., 429 A.2d 726, 728 (Pa. 1981). Here, this exception does not apply because Chemtech no longer alleges any independent tort claim as it did in its original Complaint.

met, which is not the same as asserting they have actually been satisfied. In other words, without a renewal of the Agreement, CIT was under no contractual obligation to Chemtech at the time of the alleged breaches.

Chemtech responds that its Amended Complaint states a breach of contract claim upon which relief can be granted. According to Chemtech, its assertions that the parties conducted themselves as if the prerequisites to the renewal provision were met and as if the Agreement renewed itself show the existence of a contract. Chemtech argues that the existence of a contract may be manifested orally, in writing, or as Chemtech emphasizes, "as an inference from the acts and conduct of the parties." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. 2005).

## II.   STANDARD OF REVIEW

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985). In considering a Motion to Dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)(citations omitted). Exhibits which are attached to the complaint and upon which one or more claims are based can be considered in deciding a motion to dismiss pursuant to Rule 12(b)(6). See Rossman v. Fleet Bank (R.I.) Nat'l Assoc., 280 F.3d 384, 388 n.4 (3d Cir. 2002).

## III.   DISCUSSION

Just as with CIT's Motion to Dismiss Chemtech's original Complaint, the main issue of this

present Motion to Dismiss is whether there was an existence of a contract at the time of CIT's alleged breaches. Without establishing an existence of a contractual obligation, Chemtech's Amended Complaint fails to state a claim of breach of contract against CIT. For the Agreement to have been in existence after its initial one year period, which ended on November 18, 1997, the parties had to renew it pursuant to its renewal provision. Thus, the specific question at hand is whether Chemtech's Amended Complaint alleges facts that establish that the prerequisites of the renewal provision have been met. For the following reasons, Chemtech has failed to do so.

To successfully maintain a cause of action for breach of contract, Chemtech must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. Sullivan, 873 A.2d at 716. When deciding a motion to dismiss, this Court "need not credit either 'bald assertions' or 'legal conclusions' in a complaint." Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). While a complaint need not include evidentiary detail, the plaintiff has to "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

In the Amended Complaint, Chemtech asserts that it and CIT "conducted themselves as if 'all terms and conditions [had] been met' and as if they had explicitly agreed 'as to projected unit sales goals'" and that "[a]fter November 18, 1997, Plaintiff and Defendant conducted themselves as if the Agreement renewed itself and continued in full force and effect for successive one year terms." (Chemtech's Amended Complaint, at ¶ 10-11). Chemtech added these averments to the Amended Complaint to show that the Agreement was renewed. These averments, however, are insufficient to properly state a claim of breach of contract upon which relief can be granted to Chemtech.

The statement that the parties conducted themselves as if the two prerequisites of the renewal

provision were met is nothing more than a bald assertion that this Court need not credit in its determination of this motion. "Conduct[ing] themselves as if the Agreement renewed itself" is also a bald assertion. Chemtech sets out no underlying facts explaining how the terms and conditions had been met and no underlying facts explaining how the parties came into accord as to projected unit sales goals. There is no factual explanation of the substance of the parties' conduct that shows that these two renewal prerequisites were met. Therefore, these averments do not lay any appropriate factual framework for a renewal.[2]

Moreover, Chemtech's assertions that between November 18, 1996 and March 26, 2002, "the parties continued to conduct business as usual" and that "[i]n reliance on Defendant's silence and Defendant's conduct, Plaintiff continued to perform its duties under the Agreement," (Chemtech's Amended Complaint, ¶¶ 12, 15), do not help to establish the satisfaction of the renewal prerequisites. These assertions do not show an existence of a contract, but only show a continued business

---

[2]  Even assuming that there was a renewal, the renewal would have been for an indefinite duration and CIT would have been allowed to terminate it at will. "The general rule is that when a contract provides that one party . . . shall have exclusive sale rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party *at will*." Slonaker v. P.G. Pub. Co., 13 A.2d 48, 50 (Pa. 1940) (emphasis added). Pennsylvania's adoption of the Uniform Commercial Code ("UCC") did not change this prior law governing contracts of indefinite duration. Frank Sexton Enterprises, Inc. v. Sodiaal N. Am. Corp., No. 97-7104, 2002 WL 47841, * 8 (E.D. Pa., Jan. 14, 2002) (citing Weilersbacher v. PGH Brewing Co., 218 A.2d 806, 807 (Pa. 1966)); see also 13 Pa. C.S. § 2309(b) ("Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party."). Plaintiffs have the burden to overcome the presumption of this general rule. Cummings v. Kelling Nut Co., 84 A.2d 323, 325 (Pa. 1951). Thus, Chemtech would have to establish that the nature and circumstances surrounding this renewal would create the inference that the parties contemplated a definite or reasonable period. Id.

Chemtech fails to meet this burden because there is no indication in its Amended Complaint that the renewal would be for a definite length of time. While Chemtech asserts that the "Plaintiff understood, and believes Defendant to have understood, that a renewal term would be the same as the initial term, that is, one year" and that the parties conducted themselves as if the Agreement was renewed for "successive one year terms," (Chemtech's Amended Complaint, at ¶¶ 7, 11), these are just mere conclusory statements with no underlying facts alleged to support them. As stated above, this Court cannot give credit to bald assertions in determining a motion to dismiss. Evancho, 423 F.3d at 351. Moreover, the Amended Complaint clearly states that the Agreement does not specify the length of a renewal term. (Chemtech's Amended Complaint, ¶ 7). Therefore, even if there was a renewal it was of an indefinite duration and CIT was allowed as a matter of law to terminate it at will.

relationship between the parties on an at will basis. They do not indicate how the Agreement's terms and conditions were continually satisfied after November 18, 1997 and do not contain any discussion about the parties agreeing as to projected sales goals. Thus, CIT's termination of the parties' distributorship relationship in March 2002 was only a termination of an at will relationship.

## IV.     CONCLUSION

In conclusion, Chemtech's Amended Complaint still fails to show that CIT was under a contractual obligation at the time of the alleged breaches. Because no factual predicate was alleged showing the satisfaction of the two renewal prerequisites, the Amended Complaint does not establish a renewal of the Agreement. Stating that the parties conducted themselves as if the terms and conditions of the Agreement have been met and as if they were in accord as to projected unit sales goals, is not the same as alleging facts to show how these prerequisites were actually met. Therefore, Chemtech fails to state a claim of breach of contract upon which relief can be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHEMTECH INTERNATIONAL, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 05-140 |
| CHEMICAL INJECTION TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**O R D E R**

**AND NOW** this 26th day of June, 2006, upon consideration of Defendant Chemical Injection Technologies, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 16), and the Responses and Replies thereto, it is it is hereby **ORDERED** that the Motion is **GRANTED** and all claims against Defendant are hereby **DISMISSED.**

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY,          Sr. J.